```
                                              USDC SDNY
                                              DOCUMENT
UNITED STATES DISTRICT COURT                  ELECTRONICALLY FILED
SOUTHERN DISTRICT OF NEW YORK                 DOC #:
                                              DATE FILED: 3/26/2025
```

| CHARLES J. DITKOFF, | |
|---|---|
| Plaintiff, | 24-cv-1955 (MKV) |
| -against- | |
| DR. ANDREW B. WOLFF and MICHAEL E. WOLFF, | OPINION & ORDER GRANTING MOTIONS TO DISMISS |
| Defendants. | |

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Charles J. Ditkoff, an attorney who is proceeding *pro se*, asserts claims against Defendants Andrew B. Wolff and Michael E. Wolff for defamation and tortious interference with his business relationship with a law firm [ECF Nos. 1, 17]. Defendants both move, separately, to dismiss for lack of personal jurisdiction and failure to state a claim, pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, respectively [ECF Nos. 23, 26]. The motions to dismiss for lack of personal jurisdiction are GRANTED for the reasons set forth below. Because the Court concludes that it lacks personal jurisdiction over Defendants, the Court does not reach the merits of Plaintiff's claims.

## I. BACKGROUND

### A. Facts[1]

Plaintiff Charles Ditkoff, a citizen of New York, is an attorney, investment banker, and financial consultant. *See* AC at 2, 19, 28. Defendant Andrew Wolff is a citizen of Virginia who

---

[1] The facts underlying Plaintiff's claims are taken from the Amended Complaint [ECF No. 17 ("AC")], which is Plaintiff's operative pleading. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Amended Complaint includes the exhibits attached to it. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Many of the details of Plaintiff's factual allegations are not relevant, however, and therefore are not recited here, since the Court concludes that Plaintiff has not made "a *prima facie* showing that the court has jurisdiction under [the] long-arm statute." *Visual Scis., Inc. v. Integrated Commc'ns Inc.*, 660 F.2d 56, 58 (2d Cir. 1981). With respect to "jurisdictional facts," a court may consider "affidavits" submitted by the parties. *Id.* As such, the Court considers the Declaration of Defendant

works as an orthopedic surgeon in Washington, D.C.  *See* AC at 3, 19.  Defendant Michael Wolff is a citizen of Missouri.  AC at 4; *see* MW Decl. ¶ 3.  He is a former chief justice and judge of the Missouri Supreme Court and a former dean and professor emeritus of Saint Louis University School of law.  AC at 27; MW Decl. ¶ 1.

Plaintiff alleges that, in mid-September 2023, a mutual friend of both Plaintiff and Andrew Wolff reached out to Plaintiff.  *See* AC at 19.  The mutual friend told Plaintiff that Andrew Wolff had "financial" concerns about the sale of his medical practice in Washington, D.C. and the mutual friend had "suggested that [Andrew Wolff] hire Plaintiff to help [him] fully understand and potentially manage these difficulties."  AC at 19.  Plaintiff told the mutual friend that he would speak to Andrew Wolff and charge less than his "customary rate as a financial consultant" as a favor to the mutual friend.  AC at 19.

Shortly thereafter, Andrew Wolff emailed Plaintiff, thanked him "for agreeing to help," and sent him several documents.  AC at 20; AC, Ex. 5.  Plaintiff responded that he "charge[s] per hour" and would "start the clock" if he reviewed the documents, but he was willing to speak with Andrew Wolff by phone "(no charge)" to help him determine if he wished to retain Plaintiff or wanted Plaintiff to "suggest a better option."  AC, Ex. 7; *see* AC at 20.  Plaintiff and Andrew Wolff then spoke by phone.  *See* AC at 20.  During a "one-hour call," Andrew Wolff told Plaintiff about the "financial issues" he and his practice were having with "the principal owner of the Practice (the 'Holding Company'), and Atlantic Street Capital, a private equity firm and the principal owner of the Holding Company."  AC at 19.  According to Plaintiff, Andrew Wolff was concerned about

---

Michael Wolff [ECF No. 26-5 ("MW Decl.")] in addition to Plaintiff's allegations in connection with jurisdiction.  *See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84–85 (2d Cir. 2013).  The Court notes that, because the Amended Complaint contains several, separately-paginated documents, and does not contain numbered paragraphs, the Court cites to the page numbers generated by ECF.  The Amended Complaint also attaches a number of exhibits, which are clearly labeled and, therefore, cited as such.

"the financial viability of [the] Holding Company," the value of his investment, and the way his compensation was calculated. AC at 20.

Plaintiff alleges that, "[d]uring the weeks of September 18 and 25," he and Andrew Wolff reached "multipart Agreements," via "emails and texts," that were "all sent to (and from) Plaintiff in New York," for Plaintiff to "act as [a] financial consultant" to help Andrew Wolff "understand and manage the financial aspects" of the sale of the medical practice in Washington, D.C. and to "[h]elp" him "find legal counsel." AC at 21. Pertinent to this motion, Plaintiff does not allege that Andrew Wolff ever went to New York, either to meet with Plaintiff or to perform any business, and Plaintiff does not allege that any of the entities involved in the sale of the medical practice had any ties to New York.

According to the Amended Complaint, at the time of his interactions with Andrew Wolff, Plaintiff had long been employed by McDermott Will & Emery, a law firm with an office in New York (the "Firm" or "MWE"). *See* AC at 12, 36–37. Plaintiff alleges that "[a]lthough Plaintiff was listed on the Law Firm's website as Counsel, when Plaintiff joined [the] Law Firm's New York office in 2021, Plaintiff had not practiced law for over twenty years." AC at 36–37. Plaintiff's employment agreement with the Firm, which Plaintiff attached to the Amended Complaint as an exhibit, states that his title is "Employee Counsel." AC, Ex. 2. According to Plaintiff, he worked for the Firm "in a non-legal capacity and on a part-time basis." AC at 37.

Plaintiff alleges that he provided Andrew Wolff with financial analysis and helped him prepare for a meeting with executives of the Holding Company. *See* AC at 22–25. Plaintiff also asked MWE to "perform a conflict check" to determine whether it could represent Andrew Wolff. AC at 26. MWE advised Plaintiff that it represented Atlantic Street Capital, the private equity firm that owned the Holding Company adverse to Andrew Wolff, in unrelated matters. *See* AC, Ex. 18.

MWE further advised Plaintiff that it would have to give "notice" to Atlantic Street, and Plaintiff would have to "inform [his] client of MWE's representation of Atlantic Street" and "ensure that they waive" the potential conflict or "allow them the opportunity to decline to proceed." AC, Ex. 18. Plaintiff sent a text message to Andrew Wolff that said: "We can only work with McDermott if we give notice to Atlantic Street. That's obviously a non starter." AC, Ex. 20; *see* AC at 26. Plaintiff suggested Andrew Wolff meet with certain partners at other, prestigious law firms, including Latham & Watkins and Wilmer Hale. AC at 26.

On September 28, 2023, Andrew Wolff introduced his father, Michael Wolff, to Plaintiff via email. AC at 27. Plaintiff wrote to Michael Wolff to "provide" him "with some context." AC at 28. Plaintiff noted that he "ha[d]n't been providing [Michael Wolff's] son with legal or tax advice. Just consulting him on the general business situation." AC, Ex. 31; AC at 28. Michael Wolff commented that he was "very wary" of engaging the firms Plaintiff had suggested "without a tight cap on fees." AC, Ex. 30; AC at 27.

On September 29, 2023, Plaintiff "emailed from New York an invoice . . . for $9,750" to Andrew Wolff. AC at 29. Plaintiff followed up several times over the next few months but did not receive a response. *See* AC at 29–30. Thereafter, in early January 2024, Andrew Wolff replied that he had been "under the impression that [Plaintiff would] help for a few thousand dollars," and he mailed Plaintiff a check for $3,000. AC at 30. After further email communications among Plaintiff, Andrew Wolff, and Michael Wolff, on February 8, 2024, Plaintiff filed an action against Andrew Wolff in small claims court in Washington, D.C. *See* AC at 19, 30–31; AC, Ex. 4.

Shortly thereafter, on February 14, 2024, Michael Wolff sent a letter, via email, to the general counsel and deputy general counsel of Plaintiff's firm. AC, Ex. 1 (the "Letter"). Plaintiff asserts that the Letter was "written by [Michael Wolff] on behalf of, and with the assistance and

assent of [Andrew Wolff]." AC at 32. Crucial to the disposition of this motion, the Letter is addressed to the general counsel in the "Chicago office" and the deputy general counsel in the "Washington DC office" and signed by Michael Wolff in "St. Louis MO." AC, Ex. 1. Plaintiff was not copied. *See* AC, Ex. 1.

In the Letter, Michael Wolff sought "to bring to [the recipients'] attention the conduct of a lawyer in [their] New York office." AC, Ex. 1. He went on to characterize the communications between Plaintiff and Andrew Wolff and stated "three problems [were] readily apparent." *Id*. Michael Wolff wrote that, first, Plaintiff had a "conflict of interest" because "his law firm . . . represented the adverse party." *Id*. Second, Michael Wolff wrote, Plaintiff "seems to me to have engaged in the unauthorized practice of law," since Plaintiff was not admitted in Virginia, Maryland, or the District of Columbia, where Andrew Wolff "resides" and "has offices." *Id*. Michael Wolff further wrote: Plaintiff "purports to be a consultant and not be acting as a lawyer, but what he says he would do would fit the definition of the practice of law in most jurisdictions I am familiar with." *Id*. Third, Michael Wolff suggested that Plaintiff's behavior was inconsistent with the standards of the Firm. *Id.*

In the days after Michael Wolff sent the Letter, the deputy general counsel forwarded the Letter to Plaintiff, Plaintiff had a conference call with the general counsel and deputy general counsel, the chairman of the Firm called Plaintiff and "expressed displeasure," and the Firm sent a response to Michael Wolff. AC at 48. One week after Michael Wolff sent the Letter, the "Chairman called Plaintiff in New York and . . . terminated Plaintiff." AC at 49.

### B. Procedural History

Plaintiff, proceeding *pro se*, initiated this action by filing a complaint against Defendants [ECF No. 1]. Each defendant responded by filing a pre-motion letter seeking leave to file a motion

to dismiss for lack of personal jurisdiction, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, and for failure to state a claim, pursuant to Rule 12(b)(6) [ECF Nos. 9, 12]. Plaintiff responded to the substance of Defendants' arguments [ECF Nos. 13, 14].

The Court issued an Order granting Defendants leave to file their contemplated motions and, *sua sponte*, granting Plaintiff leave to amend his pleading before any such motion was filed [ECF No. 15 ("Scheduling Order")]. The Court warned Plaintiff, in bold typeface, that the deadline to amend would be his "**last opportunity to amend in response to arguments raised in the pre-motion letters.**" Scheduling Order. The Court set lengthy deadlines for Plaintiff expressly "[t]o accommodate [his] *pro se* status." *Id*.

Plaintiff thereafter filed the Amended Complaint [ECF No. 17 ("AC")], which purports to assert three claims: (1) libel, AC at 16; (2) libel *per se*, AC at 17; and (3) tortious interference with business relationship, AC at 17. Defendants filed motions to dismiss [ECF Nos. 23, 24 ("AW Mem."), 26, 26-5 ("MW Decl."), 27 ("MW Mem.")]. Plaintiff filed an opposition to each motion [ECF Nos. 34 ("Opp. to AW"), 35 ("Opp. to MW")]. Defendants filed reply briefs in further support of their motions [ECF Nos. 36 ("AW Reply"), 38 ("MW Reply")].

## II. <u>LEGAL STANDARD</u>

To survive a motion to dismiss for lack of personal jurisdiction, under Rule 12(b)(2), the plaintiff must make a *prima facie* showing that the Court has personal jurisdiction over the defendant. *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006); *see Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (the "plaintiff bears the burden"). "This *prima facie* showing 'must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant.'" *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616

F.3d 158, 163 (2d Cir. 2010)). "In evaluating whether the requisite showing has been made," the Court must "construe the pleadings and any supporting materials in the light most favorable" to the plaintiff. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013). However, "[c]onclusory non-fact-specific jurisdictional allegations" or a "legal conclusion couched as a factual allegation" will not establish a *prima facie* showing of jurisdiction. *Jazini by Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998).

### III.    ANALYSIS

Before turning to its analysis of whether Plaintiff has made a *prima facie* showing that the Court has personal jurisdiction over Defendants, the Court must address "the appropriate degree of special solicitude" to afford Plaintiff. *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010). The Court typically is required to "liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (quoting *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007)). However, the "exact degree" of leniency to which a *pro se* plaintiff is entitled "depend[s] upon a variety of factors, including" the "procedural context and relevant characteristics of the particular litigant." *Tracy*, 623 F.3d at 102. The Second Circuit has noted that "a lawyer representing himself ordinarily receives no such solicitude at all." *Id.*; *see Harbulak v. Suffolk Cnty.*, 654 F.2d 194, 198 (2d Cir. 1981).

Plaintiff is an attorney, but he represents that he has not practiced law for more than thirty years. *See* AC at 36–37. In light of Second Circuit guidance, the Court concludes that "complete withdrawal of the ordinary solicitude" afforded *pro se* plaintiffs would not be appropriate. *Tracy*, 623 F.3d at 103. As such, the Court previously took steps "[t]o accommodate Plaintiff's *pro se* status." Scheduling Order. The Court has also liberally construed the Amended Complaint and

7

supporting materials. *See McLeod*, 864 F.3d at 156. However, the Court is constrained to the strongest arguments Plaintiff's submissions actually "suggest." *Id*. Moreover, the Court cannot ignore "documentary evidence" that "contradict[s]" Plaintiff's assertions. *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011); *see Jazini*, 148 F.3d at 185.

### A. Plaintiff Fails To Make a *Prima Facie* Showing of Personal Jurisdiction.

On a motion to dismiss for lack of personal jurisdiction, the Court must "determine whether the defendant is subject to jurisdiction under the law of the forum state—here, New York," and, if so, the Court must "consider whether the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014). Under New York law, a plaintiff must show that either the defendant was subject to general jurisdiction in New York, or that an out-of-state defendant was subject to specific jurisdiction because it "committed acts within the scope of New York's long-arm statute, C.P.L.R. § 302." *DeLorenzo v. Viceroy Hotel Group, LLC*, 757 F. App'x 6, 8 (2d Cir. 2018).

Plaintiff does not argue that either defendant is subject to general personal jurisdiction in New York, and, as such, the Court deems any such argument waived. *See* Opp. to MW at 9–13; Opp. to AW at 13–18; *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998); *Tlapanco v. Elges*, No. 15-cv-2852 (AJN), 2017 WL 4329789, at *4 (S.D.N.Y. Sept. 14, 2017). Regardless, according to the Amended Complaint, Michael Wolff is domiciled in Missouri, and Andrew Wolff is domiciled in Virginia. *See* AC at 3–5. There are no allegations in the Amended Complaint to suggest that this is "an 'exceptional case,'" in which "an individual's contacts with a forum might be so extensive as to support general jurisdiction notwithstanding domicile elsewhere." *Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19

(2014) (pointing out that "the Second Circuit has yet to find such a case"); *see also Giannetta v. Johnson*, No. 20-cv-9016 (PAE), 2021 WL 2593305, at *6 (S.D.N.Y. June 24, 2021) (rejecting *pro se* plaintiff's argument for exercising general jurisdiction over non-domiciliary defendant in a defamation case). As such, Plaintiff must show that each defendant is subject to specific jurisdiction for each claim under one of the provisions of the New York long-arm statute. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351 at 359 (2021); *Goldfarb v. Channel One Russia*, 442 F. Supp. 3d 649, 661 (S.D.N.Y. 2020); *Symmetra Pty Ltd. v. Hum. Facets, LLC*, 2013 WL 2896876, at *4 (S.D.N.Y. June 13, 2013).

> The New York long-arm statute, section 302, provides in pertinent part:
>
> (a) . . . a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent:
>
>   1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
>   2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
>
>   3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>
>       (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>       (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

C.P.L.R. § 302(a). "Importantly for present purposes, sections 302(a)(2) and (3), which permit jurisdiction over tortious acts committed in New York and those committed outside New York that cause injuries in the state, respectively, explicitly exempt causes of action for the tort of defamation from their scope." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 244–45 (2d Cir. 2007).

1. **Defendants Do Not Transact Business in New York**

Plaintiff argues that Defendants are subject to jurisdiction under to section 302(a)(1) of the long-arm statute. Pursuant to section § 302(a)(1), a court may exercise specific jurisdiction over a non-domiciliary that "in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." C.P.L.R. § 302(a)(1). "To determine the existence of jurisdiction under section 302(a)(1), a court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." *Best Van Lines, Inc.*, 490 F.3d at 246 (quoting C.P.L.R. § 302(a)(1)); *see Deutsche Bank Securities, Inc. v. Montana Bd. of Investments*, 7 N.Y.3d 65, 71, 850 N.E.2d 1140, 1142, 818 N.Y.S.2d 164, 166 (2006).

Ordinarily, in evaluating the first part of the test, whether the defendant transacts business, "[c]ourts look to 'the totality of the defendant's activities within the forum'" to decide whether the defendant engaged in "purposeful activity" in New York. *Best Van Lines*, 490 F.3d at 246 (quoting *Sterling National Bank & Trust Co. of N.Y. v. Fidelity Mortgage Investors*, 510 F.2d 870, 873 (2d Cir. 1975)). "In defamation cases, however, New York courts construe 'transacts any business within the state' more narrowly than in other types of litigation." *Goldfarb*, 442 F. Supp. 3d at 661 (quoting *Best Van Lines*, 490 F.3d at 248). In particular, "the defamatory publication itself" cannot be the transaction that establishes jurisdiction in New York. *Best Van Lines*, 490 F.3d at 248 ("the single act of uttering a defamation, no matter how loudly, is not a transact[ion of] business that may provide the foundation for personal jurisdiction" (alteration in original)). Thus, "more than

10

the distribution of a libelous statement must be made within the state to establish long-arm jurisdiction over the person distributing it." *Id*. at 249.

In other words, the Second Circuit has explained, "New York courts have found jurisdiction in cases where the defendants' out-of-state conduct involved defamatory statements *projected into New York* and targeting New Yorkers, *but only where the conduct also included something more*." *Id.* (emphases added); *see Pontarelli v. Shapero*, 231 A.D.2d 407, 647 N.Y.S.2d 185, 188 (1st Dep't 1996) (holding that sending two defamatory letters and a facsimile into New York was not sufficient under Section 302(a)(1)). The allegations in the Amended Complaint fail to meet this test in two key respects. Plaintiff fails adequately to allege that Defendants "projected" allegedly defamatory statements "into New York," and Plaintiff fails adequately to allege that they did "something more" in New York. *Best Van Lines*, 490 F.3d at 249.

i. **Defendants Did Not Send the Letter to New York**

Plaintiff fails adequately to allege that Defendants "projected" the allegedly defamatory Letter "into New York." *Best Van Lines, Inc*., 490 F.3d at 249. On the contrary, the Letter, which Plaintiff attached to his Amended Complaint, was sent only to one person in the "Chicago office" and one person in the "Washington DC office" of Plaintiff's law firm. AC, Ex. 1. In other words, accepting Plaintiff's version of events, Defendants did not send the allegedly defamatory Letter to anyone in New York. *See* AC at 12 (alleging that the Letter was sent to the deputy general counsel and general counsel of the Firm, who "primarily office in Chicago and the District of Columbia, respectively"); Opp. to MW at 2 (noting that Defendants did not "copy" Plaintiff on the email); AC at 6 (alleging that the events underlying Plaintiff's claims "occurred[d]" in "Illinois" and "Washington DC," as well as Missouri, New York, and Virginia).

11

Thus, according to Plaintiff's own pleading, someone located outside of New York made allegedly defamatory statements to two other people also located outside of New York. *See* AC, Ex. 1. Controlling precedent requires "the distribution of a libelous statement . . . within the state" plus "more." *Best Van Lines*, 490 F.3d at 249. Here, Plaintiff does not even allege that Defendants "distribut[ed]" the allegedly "libelous statement . . . within the state." *Id.*

Plaintiff argues that "*Defendants 'projected' themselves into NY* by emailing the Letter -- about the *NY* activities of a *NY* employee of [the] Law Firm's *NY* office -- to [individuals] with supervisory authority over such *NY* office – which Letter was, most likely and foreseeably forwarded to *NY* employees of [the] Law Firm." Opp. to MW at 11 (emphases and punctuation formatting in original). The crux of Plaintiff's argument is that the allegedly defamatory Letter "target[ed]" him, a "New Yorker[.]" *Best Van Lines*, 490 F.3d at 249. However, the Second Circuit has explained that, under Section 302(a)(1), it is required (but not sufficient) that the alleged libel is *both* "projected into New York *and* targeting New Yorkers." *Id.* (emphasis added).[2] Plaintiff incorrectly conflates the two required elements.

Under New York law, it simply is not sufficient to allege that the Letter, which was sent from Missouri to Illinois and Washington, D.C., was about Plaintiff and allegedly had an effect on Plaintiff in New York. *See Yanni v. Variety, Inc.*, 48 A.D.2d 803, 803, 369 N.Y.S.2d 448, 449 (1st Dep't 1975). In *Best Van Lines*, the Second Circuit explained that New York has expressly rejected the "effects test," established in *Calder v. Jones*, 465 U.S. 783 (1984). *Best Van Lines, Inc.*, 490 F.3d at 243–46. In *Calder*, the Supreme Court held that California courts could, consistent with the Due Process Clause, exercise personal jurisdiction over Florida residents who published an allegedly libelous story because "California [was] the focal point both of the story and of the harm

---

[2] S*ee* Antonin Scalia & Bryan Garner, Reading Law 116–17 (2012) (the use of the conjunction "and" implies that the word "both" precedes "the first element" of two required elements).

suffered." *Calder*, 465 U.S. at 789. In *Best Van Lines*, the Second Circuit, surveying New York cases, explained that, because New York explicitly exempted defamation from sections 302(a)(2) and 302(a)(3) of its long-arm statute, New York "create[d] a 'gap' between the jurisdiction conferred by the New York statute and the full extent of jurisdiction permissible under" the *Calder* effects test. *Best Van Lines, Inc.*, 490 F.3d at 245; *see Ingraham v. Carroll*, 90 N.Y.2d 592, 597, 687 N.E.2d 1293, 1295 (1997). The Second Circuit further explained that section 302(a)(1) cannot be used to eliminate that gap. *Best Van Lines, Inc.*, 490 F.3d at 248.

Plaintiff essentially argues that he satisfies the *Calder* effects test, stressing that the Letter was about his activities and caused him harm in New York. *See* Opp. to MW at 11. However, as the Second Circuit and New York Court of Appeals have made clear, such an argument is not sufficient for jurisdiction under any section of the New York long-arm statute. *See Best Van Lines, Inc.*, 490 F.3d at 243–46; *Ingraham*, 90 N.Y.2d at 597, 687 N.E.2d at 1295. In all events, there is no personal jurisdiction where the alleged libel is not projected, *i.e.* distributed by the defendant, in New York. *See Yanni*, 48 A.D.2d at 803, 369 N.Y.S.2d at 449; *Findlay v. Duthuit*, 86 A.D.2d 789, 790, 446 N.Y.S.2d 951, 953 (1st Dep't 1982).

    **ii.**    **Defendants Did Not Do "Something More" To Transact Business in New York**

Plaintiff also fails to adequately allege that Defendants did "something more" than make an allegedly defamatory statement in New York (which, as discussed above, Defendants did not do). *Best Van Lines, Inc.*, 490 F.3d at 249. "The 'something more' standard is satisfied 'when at least part of the defamatory content was created, researched, written, developed, or produced in New York.'" *Prince v. Intercept*, 634 F. Supp. 3d 114, 129 (S.D.N.Y. 2022) (quoting *Goldfarb*, 442 F. Supp at 662); *see Legros v. Irving*, 38 A.D.2d 53, 327 N.Y.S.2d 371 (1st Dep't 1971) (finding personal jurisdiction where "virtually all the work attendant upon publication" of the allegedly

13

defamatory book at issue occurred in New York). "'Examples of activities that . . . do not qualify' include 'brief visits and phone calls to the state.'" *Prince*, 634 F. Supp. 3d at 129 (quoting *Giannetta v. Johnson*, 2021 WL 2593305, at *8 (S.D.N.Y. June 24, 2021)).

Plaintiff fails to allege that either defendant did *anything* in New York. Plaintiff alleges only that Defendants communicated with Plaintiff while Plaintiff was in New York. *See* AC at 21 ("emails and texts," were "all sent to (and from) Plaintiff in New York"). However, those are examples of activities that do not qualify as business transactions in New York under New York law. *See Prince*, 634 F. Supp. 3d at 129; *U.S. Theater Corp. v. Gunwyn/Lansburgh Ltd. P'ship*, 825 F. Supp. 594, 596 n.4, 596–97 (S.D.N.Y. 1993) (concluding that scores of letters and phone calls were not sufficient for personal jurisdiction because the defendant "did not intend to do business in New York" through communications). Indeed, "New York courts have consistently refused to sustain section 302(a)(1) jurisdiction solely on the basis of [a] defendant's communication from another locale with a party in New York." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 128–29 (2d Cir. 2013) (quoting *Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 766 (2d Cir. 1983)); *see* M. *Katz & Son Billiard Prods., Inc. v. G. Correale & Sons, Inc.*, 20 N.Y.2d 903, 905, 232 N.E.2d 864, 864 (1967).

Plaintiff further alleges that he prepared financial analyses for Andrew Wolff and sent him an invoice, among other activities, from New York. *See* AC at 22–25, 29. These allegations about *Plaintiff's* activities in New York are simply beside the point, however, since "the Court must evaluate the *Defendant's* activities and conduct." *Woods v. Pettine*, No. 13-cv-290 (PGG), 2014 WL 292363, at *8 (S.D.N.Y. Jan. 27, 2014) (emphasis added) (quoting *Mortg. Funding Corp. v. Boyer Lake Pointe*, LC, 379 F. Supp. 2d 282, 288 (E.D.N.Y. 2005)); *see Success Mktg. Elecs., Inc. v. Titan Sec., Inc.*, 204 A.D.2d 711, 712, 612 N.Y.S.2d 451, 451 (2nd Dep't 1994) (ruling that

there was no personal jurisdiction where "all of the activities in New York . . . were performed by the plaintiff"); *Fahey v. Breakthrough Films & Television Inc.*, No. 21-cv-3208 (PAE), 2022 WL 4547438, at *6 (S.D.N.Y. Sept. 29, 2022).

Crucially, moreover, Plaintiff does not allege that the transaction involving Andrew Wolff's medical practice had any connection to New York whatsoever besides Defendants' communications (from outside of New York) with Plaintiff (who was in New York). Hiring an attorney who happens to be based in New York, but who could have performed the same services from an office somewhere else, by itself, is not enough for personal jurisdiction under Section 302(a)(1). *See PaineWebber Inc. v. Westgate Grp., Inc.*, 748 F. Supp. 115, 120 (S.D.N.Y. 1990) ("'Get me a New York lawyer,' without more, is not an invocation of *in personam* jurisdiction in the forum state of the lawyer's practice"); *Amins v. Life Support Med. Equip. Corp.*, 373 F. Supp. 654, 658 (E.D.N.Y. 1974); *Law Research Serv., Inc. v. Crook*, 36 A.D.2d 912, 912, 320 N.Y.S.2d 851, 851 (1971). Accordingly, the Court concludes that Plaintiff has not made a *prima facie* showing of personal jurisdiction over Defendants with respect to his libel claims.

The Court must reach precisely the same conclusion with respect to Plaintiff's claim for tortious interference with a business relationship based on precisely the same allegedly libelous communication. *See Cantor Fitzgerald, L.P, v. Peaslee*, 88 F.3d 152, 157 (2d Cir. 1996); *Findlay v. Duthuit*, 86 A.D.2d 789, 790, 446 N.Y.S.2d 951, 952 (1st Dep't 1982). Plaintiff's "claims arising from the Letter unavoidably sound in defamation alone. [He] 'cannot evade the bar to defamation claims by recasting [a] defamation claims as other torts.'" *Fahey*, 2022 WL 4547438, at *7 (quoting *Giannetta*, 2021 WL 2593305, at *9 (brackets omitted)); *accord Shamoun v. Mushlin*, No. 12-cv-3541 (AJN), 2014 WL 12776779, at *4 (S.D.N.Y. Mar. 26, 2014).

Moreover, even if Plaintiff's tortious interference claim were not merely Plaintiff's libel

claim recast as another tort, Plaintiff cannot make a *prima facie* showing of personal jurisdiction over Defendants for that claim. Plaintiff does not allege that Defendants ever stepped foot "within the state" as required by section 302(a)(2). C.P.L.R. § 302(a)(2); *see Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 790 (2d Cir. 1999). As such the only potential basis for personal jurisdiction over Defendants is section 302(a)(3). It provides for jurisdiction over an out-of-state defendant who commits a tort from outside of New York that causes an injury in New York "if he" also "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state," or "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." C.P.L.R. § 302(a)(3). Here, there are simply no allegations that plausibly suggest Defendants regularly do or solicit business in New York, engage in any other persistent course of conduct in New York, derive substantial revenue from New York goods or services, or derive substantial revenue from interstate or international commerce. As such, Plaintiff fails to make a *prima facie* showing of personal jurisdiction over Defendants pursuant to section 302(a)(3).

The Court therefore lacks jurisdiction over Defendants, and, as such, the Court does not reach the merits of Plaintiff's claims.

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS Defendants' motions to dismiss for lack of personal jurisdiction. Accordingly, this case is dismissed without prejudice. The Clerk of Court respectfully is requested to terminate all pending motions and to close this case.

**SO ORDERED.**

Date: March 26, 2025  
New York, NY

_____  
**MARY KAY VYSKOCIL**  
**United States District Judge**